UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | 18-MD-2819 (NG) (LB) |
| THIS DOCUMENT APPLIES TO:<br>*FWK Holdings, LLC v. Allergan, Inc.,* 18-cv-677;<br>*Rochester Drug Co-Operative, Inc. v. Allergan, Inc.,* 18-cv-970;<br>*KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., v. Allergan, Inc.*, No. 18-cv-974; and<br>*Meijer, Inc. and Meijer Distribution, Inc. v. Allergan, Inc.,* 19-cv-2563 (E.D.N.Y). | OPINION AND ORDER |

**GERSHON, United States District Judge:**

In this antitrust multi-district litigation, plaintiffs FWK Holdings, LLC ("FWK"), Rochester Drug Co-Operative, Inc. ("RDC"), KPH Healthcare Services, Inc. a/k/a Kinney Drugs ("KPH"), Inc., Meijer, Inc., and Meijer Distribution, Inc. (together, "Meijer") (collectively, "Direct Purchaser Class Plaintiffs" or "DPPs") have moved for certification of a settlement class; final approval of the settlement; approval of the plan of allocation; reimbursement of counsel's expenses and award of attorneys' fees and service awards; and an order of dismissal with prejudice. The motion is unopposed.

On February 16, 2020, DPPs and defendant Allergan, Inc. entered into a settlement agreement (the "Settlement Agreement") in which defendant agreed to pay the class $51,250,000.[1] On May 15, 2020, after my scrutiny of the Settlement Agreement and after several written exchanges between counsel and myself, I granted preliminary approval of the settlement, approved

---

[1] Allergan has deposited this amount in an escrow account (the "Settlement Fund").

the form and manner of notice to the class, appointed a claims administrator and escrow agent, and set a date for a final Fairness Hearing (the "Preliminary Approval Order").

In the Preliminary Approval Order, the Direct Purchaser Settlement Class was defined as:

> All persons who or entities which purchased Restasis in the United States or its territories and possessions directly from Allergan at any time after May 2014 through and including February 16, 2020 (the "Class Period"). Excluded from the class are Allergan and its officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.

Excluded from the class are the following entities, in their own capacity or as assignees, who have filed separate, but coordinated, individual actions against Allergan: CVS Pharmacy, Inc., Rite Aid Corp., Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co., Albertsons Companies, Inc., and HEB Grocery Company L.P.  These plaintiffs have separately settled their cases against Allergan.

On June 12, 2020, notice to the class was disseminated.  Class members had until August 3, 2020 to object to the settlement, to opt out of the class, or to file a notice of intention to appear at the Fairness Hearing.  No class member objected to the settlement or excluded itself, and no class member sought to speak at the Fairness Hearing.

On July 10, 2020, DPPs, by class counsel, filed a timely motion for reimbursement of their expenses as well as an award of attorneys' fees and service awards for the class representatives.

On October 1, 2020, I held a Fairness Hearing at which I heard from counsel.[2]

Having considered all the submissions and arguments with respect to the settlement, and for the reasons discussed below, I now grant DPPs' motion to the extent indicated below. This Opinion and Order incorporates the Settlement Agreement dated February 16, 2020.

---

[2] On August 6, 2020, I ordered that, because of the COVID-19 pandemic, the Fairness Hearing would be held virtually.  On September 10, 2020, I rescheduled the Fairness Hearing to October 1, 2020.  The Direct Purchaser Settlement Class received notice of these changes.

I have jurisdiction over this action and all the parties in this action, including, but not limited to, all class members, for all matters relating to this action, and the settlement, including, without limitation, the administration, interpretation, effectuation, or enforcement of the settlement and this Opinion and Order.

**A.      Certification of the Settlement Class**

First, I certify the settlement class. The class is defined as it was in the Preliminary Approval Order, with the same exclusions. Pursuant to Rule 23(a)(1), I determine that the Direct Purchaser Settlement Class is so numerous that joinder of all members is impracticable. According to data produced in this litigation, the Direct Purchaser Settlement Class has at least 37 members geographically dispersed throughout the United States.

I identify, under Rule 23(c)(1)(B), the following classwide issues relating to claims and/or defenses as questions of law or fact that are common to the Direct Purchaser Settlement Class and satisfy Rule 23(a)(2): whether Allergan had monopoly power over cyclosporine ophthalmic emulsion 0.05% products; whether Allergan engaged in unlawful conduct with respect to obtaining the second wave patents, listing them in the Orange Book, and filing patent infringement actions; whether Allergan engaged in unlawful conduct with respect to submitting allegedly baseless citizen petitions; whether Allergan's conduct violated the antitrust laws; and whether Allergan's conduct delayed the entry of generic Restasis. I find that these common issues satisfy Rule 23(a)(2).

I appoint the named plaintiffs in this lawsuit—FWK, RDC, KPH, and Meijer—as class representatives, finding that their claims are typical of those of class members, that they will fairly and adequately protect the interests of the class, and that their interests do not conflict with the interests of absent class members.

Pursuant to Rule 23(b)(3), I determine that the common questions of law and fact predominate over questions affecting only individual class members and that it is desirable to concentrate the claims of the class in a single action. Also pursuant to that rule, I determine that a class action is superior to other available methods for fair and efficient adjudication of this action. Each of these determinations is made in connection with, and solely for purposes of, settlement.

Pursuant to Rules 23(c)(1)(B) and 23(g), I appoint the following counsel as Lead Class Counsel for the Direct Purchaser Settlement Class:

> Thomas M. Sobol
> Kristen A. Johnson
> Hagens Berman Sobol Shapiro LLP
> 55 Cambridge Parkway, Suite 301
> Cambridge, MA 02142
> Telephone: (617) 482-3700
> Facsimile: (617) 482-3003
> Email: tom@hbsslaw.com
>            kristenj@hbsslaw.com

I also appoint the members of the Direct Purchaser Class Plaintiffs' Executive Committee as Class Counsel pursuant to Rule 23(g).[3]

I find that these attorneys have experience in representing similar class plaintiffs in other cases and have served well in their interim roles.

**B.     Notice**

I find that notice has been given to the class in substantially the manner that I approved in the Preliminary Approval Order and that the notice constituted the best notice practicable under the circumstances. A settlement notice (the "Notice") was mailed to each of the class members

---

[3] The executive committee consists of attorneys from Faruqi & Faruqi LLP; Berger Montague PC; Taus, Cebulash & Landau, LLP; Radice Law Firm, P.C.; Kaplan Fox & Kilsheimer LLP; Sperling & Slater, P.C.; Capshaw DeRieux, LLP; Nussbaum Law Group, P.C.; Roberts Law Firm, P.A.; and Nastlaw LLC.

via first-class mail and was also sent by email to class members, which were identified from the sales data produced by Allergan in this litigation. In addition, the Notice was posted on the settlement website.[4] The Notice provided class members due and adequate notice of the settlement, the Settlement Agreement, these proceedings, and the rights of class members to opt out of the Direct Purchaser Settlement Class or to object to the settlement. The Direct Purchaser Settlement Class, which is made up of sophisticated business entities, had a full and fair opportunity to request exclusion or to object.

**C.    Final Approval of the Settlement**

After two years of intense litigation in this complex action, including the denial of defendant's motion to dismiss the Consolidated Complaint and the conclusion of discovery, DPPs and defendant announced that they had reached a settlement. The settlement was achieved at arm's length only after DPPs' highly skilled and experienced counsel had received and reviewed the voluminous discovery and exchanged over 30 expert reports with defendant, rendering them well-advised as to both the merits and the risks of the litigation. Additionally, the settlement occurred during the pendency of a hotly contested class certification motion, in which defendant raised significant defenses including that, because defendant had executed arbitration agreements with certain members of the class, the numerosity essential to the maintenance of a class action could not be achieved. Moreover, plaintiffs' counsel have acknowledged that, even if DPPs successfully established that Allergan were liable under the antitrust laws, the range of potential damages awards would have been wide. Under all these circumstances, and considering the potential recovery and the risks of this litigation, I am satisfied that the settlement is fair, reasonable, and adequate.

---

[4] www.RestasisAntitrustSettlement.com

In addition, I find that the Proposed Plan of Allocation treats class members equitably relative to each other, as the funds will be distributed on a *pro rata* basis. Finally, as stated above, no class member has objected to the settlement, and only those class members who initiated their own litigation well before the settlement was achieved have opted out.

In sum, I find that the settlement is fair, reasonable, and adequate based on the factors set forth in Rule 23(e)(2) as well as in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). It also complies with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and the Class Action Fairness Act (including 28 U.S.C. § 1715).

The Settlement Agreement includes the following releases:

> ***12.a. Direct Purchaser Class Release.*** Upon the occurrence of the Effective Date[5] and in consideration of payment of the Settlement Amount specified in Paragraph 7 of the Settlement Agreement, Plaintiffs and all Class Members, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives, assignees (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives and assignees), and their predecessors, successors, heirs, executors, administrators, and representatives (collectively, the "Direct Purchaser Class Releasors"), hereby release and forever discharge, and covenant not to sue, Defendant and its past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives, assignees (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives, and assignees), and the predecessors, successors, heirs, executors,

---

[5] The Settlement Agreement defines the Effective Date as the date after the time to appeal this Opinion and Order has expired or any such appeal has been resolved.

administrators and representatives of each of the foregoing (collectively, the "Defendant Releasees") from and with respect to all manner of claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, that arise out of or relate, in whole or in part in any manner, to:

> (a) the subject matter of all acts, omissions, or other conduct alleged in the first amended consolidated class action complaint dated February 11, 2019, and/or the complaint and jury demand of Meijer, Inc. and Meijer Distribution, Inc. dated May 1, 2019, in the Action related to Restasis or its generic equivalents, (b) the subject matter of any prior complaints or subsequent amended complaints related to Restasis or its generic equivalents filed in the Direct Purchaser Class Action; (c) the subject matter of pretrial proceedings related to Restasis or its generic equivalents in the Direct Purchaser Class Action; and/or (d) all claims concerning alleged delay or impairment in the marketing, sale, manufacture, pricing, or purchase of, or the enforcement of intellectual property related to Restasis or its generic equivalents that could reasonably have been known and/or asserted in the Direct Purchaser Class Action, including but not limited to claims of Walker Process Fraud, sham Orange Book patent listings, sham citizen petitions, transactions with the St. Regis Mohawk Tribe, or agreements between Allergan and potential manufacturers of generic Restasis resolving patent infringement litigation prior to the date hereof (collectively, this entire paragraph, the "Released Claims").

For the avoidance of doubt, Released Claims includes any and all future claims or damages that may be alleged by any Direct Purchaser Class Member which arise out of or relate to such Class Members' future purchases of Restasis or its generic equivalent and which relate to the subject matter described in subparagraphs (a)-(d), above. Released Claims do not include any future claims or damages arising from acts, omission, or other conduct committed by Defendant on or after the date of this Settlement Agreement.

7

***12.b. Allergan's Release.*** Upon the occurrence of the Effective Date and in consideration of the Releases and Covenants specified in Paragraphs 7 and 12(a) of the Settlement Agreement, Defendant on behalf of itself and its respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives, assignees (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, representatives and assignees (collectively, the "Defendant Releasors"), hereby release and forever discharge, and covenant not to sue, Direct Purchaser Class Members and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives, assignees (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, representatives and assignees), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (collectively, the "Direct Purchaser Class Releasees") from and with respect to all manner of claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject of Paragraph 12(a) of the Settlement Agreement.

In addition, with respect to the claims that are the subject matter of Paragraph 12 of the Settlement Agreement, each Direct Purchaser Class Releasor and Defendant Releasor (collectively, "Releasors") hereby expressly waives and releases, upon the Settlement Agreement becoming final, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if

8

> known by him or her must have materially affected his or her settlement with the debtor;

and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 12 of the Settlement Agreement. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that is the subject matter of Paragraph 12 of the Settlement Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Direct Purchaser Class Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims that are the subject matter of Paragraph 12(a) that it may have against any Defendant Releasees under § 17200, et seq., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction. Each Defendant Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims that are the subject matter of Paragraph 12(b) that it may have against any Direct Purchaser Class Releasees under § 17200, et seq., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction.

The releases discussed above effect a complete and total resolution of the Direct Purchaser Class Actions to the extent of the claims of the Direct Purchaser Settlement Class that were or could have been asserted relating to the allegations in this Action, as well as any compulsory

counterclaims of Allergan relating to the allegations in the Action that were or should have been asserted, but the referenced releases do not release any claims (1) arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; or (2) arising out of or in any way related to the alleged horizontal price-fixing agreements between Allergan (as a generic manufacturer) and other manufacturers of generic pharmaceutical products, including claims alleged in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, No. 16-md-2724 (E.D. Pa.); and/or (3) other claims unrelated specifically to Restasis.

**D.  Approval of Plan of Allocation**

I approve DPPs' Proposed Plan of Allocation for the Direct Purchaser Settlement Class, which addresses the allocation of funds from the Settlement Agreement, plus interest and net of the court-approved expense reimbursement, award of attorneys' fees, and service awards to the class representatives.  I authorize Lead Class Counsel and RG/2 Claims Administration LLC, the court-appointed claims administrator, to begin the claims administration process upon the Effective Date.  I understand that, after the Effective Date, Lead Class Counsel will seek an order authorizing the distribution of the net proceeds of the settlement in accordance with the Plan of Allocation.

**E.  Reimbursement of Expenses, Attorneys' Fees, and Service Awards**

DPPs seek reimbursement of counsel's expenses totaling $1,978,235.05; an attorneys' fee award of $16,423,921.65, plus interest on that amount that may accrue prior to distribution; and service awards of $150,000 to class representatives FWK, RDC, and KPH and a service award of

10

$75,000 to Meijer.[6]  Class members were given notice of class counsel's intention to seek reimbursement of their expenses, an award of attorneys' fees, and service awards to the named plaintiffs and that those matters would be addressed at the Fairness Hearing.  No class member has objected to DPPs' requests.

Counsel seek attorneys' fees constituting one-third of the net settlement amount (that is, one-third of the $51.25 million settlement minus the requested litigation expenses).  This amounts to slightly less than their well-documented lodestar.  Counsel are highly experienced and expert in pursuing antitrust cases alleging generic delay on behalf of direct purchasers.  I have observed them throughout these intensely litigated proceedings and am satisfied that they prosecuted this case professionally, expeditiously, and efficiently.  For example, they collaboratively shared the work with counsel for the end-payor plaintiffs and also achieved innumerable compromises with defendant's counsel, saving time both for their clients and for the court.  They are amply entitled to the amount they seek.

Counsel are also entitled to reimbursement of their expenses, which were incurred, in significant part, as a result of the expert-driven nature of this complex case.  I also authorize, as counsel request, that further costs and expenses under $50,000 incurred during the claims administration process, including allocation and payment, for members of the Direct Purchaser Settlement Class may be disbursed from the Settlement Fund without further application to me.

The service awards requested by DPPs, however, are too high.  While the named plaintiffs undoubtedly served the needs of the class by bringing and prosecuting this action, the amounts

---

[6] On September 22, 2020, the DPPs filed a Notice of Errata adjusting their requested expenses from $1,948,635.05 to $1,978,235.05, to account for an invoice counsel incorrectly believed they had already paid.  Because the attorneys' fees counsel seek are one-third of the settlement amount net expenses, this adjustment slightly reduced the amount of fees that they seek.

11

sought are significantly higher than those in comparable cases and are not commensurate with the degree of effort that the named plaintiffs expended. For that reason, the awards to FWK, KPH, and RDC are reduced to $85,000 apiece, and the award to Meijer is reduced to $42,500. As DPPs acknowledge, Meijer is entitled to a lower amount because it entered the litigation much later than the other named plaintiffs.

**F.     Conclusion**

In conclusion, plaintiffs' final approval motion is granted to the extent that I approve the following payments for distribution from the Settlement Fund after the Effective Date: (1) class counsel's request for reimbursement of their expenses in the amount of $1,978,235.05; (2) an attorneys' fee award of $16,423,921.65, plus interest on that amount that may accrue prior to distribution; and (3) service awards of $85,000 to FWK, KPH, and RDC and a service award of $42,500 to Meijer, for a total of $297,500. I also authorize that further costs and expenses under $50,000 that are incurred during the claims administration process, including allocation and payment, for members of the Direct Purchaser Settlement Class may be disbursed, after the Effective Date, from the Settlement Fund without further application to the court. Except as provided for above, no costs or attorneys' fees are recoverable or sought under 15 U.S.C. § 15(a).

After the Effective Date, Lead Class Counsel and RG/2 Claims Administration LLC are authorized to begin the claims administration process. In addition, after the Effective Date, Lead Class Counsel will seek an order authorizing the distribution of the net proceeds of the settlement in accordance with the Plan of Allocation.

I retain exclusive jurisdiction over the settlement and the Settlement Agreement, including the administration and consummation of the settlement.

Releasors' Released Claims with respect to Releasees are hereby released, such release being effective as of the Effective Date. Releasors are permanently enjoined and barred from

instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against the Releasees. With respect to any non-released claim, no rulings, orders, or judgments in this Action shall have any res judicata, collateral estoppel, or offensive collateral estoppel effect.

Neither this Opinion and Order, nor the Settlement Agreement, nor any other settlement related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceeding undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission, concession or waiver of any defense in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by defendant, including, without limitation, that defendant has engaged in any conduct or practices that violate any antitrust statute or other law.

The claims against defendant Allergan by the Direct Purchaser Class Plaintiffs and Direct Purchaser Settlement Class are dismissed with prejudice, as provided in the Settlement Agreement. The Judgment to be issued by the Clerk of Court dismissing these claims is a final and appealable order. I find that no order under Fed. R. Civ. P. 54(b) is necessary, but that, if such an order were necessary, the requirements of Rule 54(b) are satisfied.

The Clerk of Court is directed to enter Judgment in accordance with this Opinion and Order.

**SO ORDERED.**

Dated:    October 6, 2020
          Brooklyn, New York

_____/s/_____
**NINA GERSHON**
**United States District Judge**